FILED
September 30, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003803716

Lawrence C. Meyerson (State Bar No. 54136)
lcm@lcmplc.com
LAWRENCE C. MEYERSON, A PLC
578 Washington Blvd., Suite 867
Marina Del Rey, California 90292
Telephone: (310) 827-3344
Facsimile: (310) 827-2244

General Insolvency Counsel for
Chapter 11 Debtor and Proposed General
Insolvency counsel for Debtor in Possession,
L & W STONE CORPORATION

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

In re

**L & W STONE CORPORATION,** a
California corporation

       Debtor and
       Debtor-in-
       Possession.

CASE NO. 10-50230-A-11

Chapter 11 Proceeding

## DEBTOR'S CHAPTER 11 PLAN

**Disclosure Statement Hearing**
Date: November 14, 2011
Time: 10:00 a.m.
Place: Department A, Courtroom 28
      501 I Street, Suite 3-200
      Sacramento, CA 95814
Judge: Hon. Michael S. McManus

**Plan Confirmation Hearing**
Date: To Be Determined
Time: To Be Determined.
Place: Courtroom 28

1

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 3

II.   CLASSICATION AND TREATMENT OF CLAIMS AND INTERESTS ................. 3
      A.   General Overview ............................................................................. 3
      B.   Unclassified Claims .......................................................................... 3
           1.   Administrative Expenses ......................................................... 3
           2.   Priority Tax Claims ................................................................. 6
      C.   Classified Claims and Interests ......................................................... 7
           1.   Classes of Secured Claims ...................................................... 7
           2.   Classes of Priority Unsecured Claims ...................................... 13
           3.   Classes of General Unsecured Claims ..................................... 13
           4.   Class(es) of Interest Holders .................................................. 18
      D.   Means of Effectuating the Plan ........................................................ 19
           1.   Funding the Plan .................................................................. 19
           2.   Post-Confirmation Management ............................................. 19
           3.   Disbursing Agent ................................................................. 20

III.  TREATMENT OF MISCELLANEOUS ITEMS ............................................... 20
      A.   Executory Contracts and Unexpired Leases ....................................... 20
           1.   Assumptions ........................................................................ 20
           2.   Rejections ........................................................................... 21
      B.   Changes in Rates Subject to Regulatory Commission ......................... 21
      C.   Retention of Jurisdiction .................................................................. 21

IV.   EFFECT OF CONFIRMATION OF PLAN ..................................................... 21
      A.   Discharge. ...................................................................................... 22
      B.   Revesting of Property in the Debtor ................................................... 22
      C.   Modification of Plan ........................................................................ 22
      D.   Post-Confirmation Status Report ...................................................... 22
      E.   Quarterly Fees ................................................................................ 22
      F.   Post-Confirmation Conversion/Dismissal ........................................... 23
      G.   Final Decree ................................................................................... 23

# I.

# INTRODUCTION

L & W Stone Corporation (the "Debtor" and/or "Plan Proponent") is the debtor in a Chapter 11 bankruptcy case.  On November 16, 2010 (the "Petition Date"), the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy  Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq.  This document is the Chapter 11 Plan proposed by the Debtor.  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.  This is a reorganizing plan.  In other words, the Plan Proponent seeks to accomplish payments under the Plan by utilizing funds generated from the operation of its business or estate (the "Estate").  The Effective Date of the proposed Plan is the first business day following fifteen days after the entry of the order confirming this Plan (the "Effective Date").

# II.

# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.      General Overview.**

As required by the Bankruptcy Code, the Plan classifies claims and interests into various classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

**B.      Unclassified Claims.**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Plan Proponent has <u>not</u> placed the following claims in a class.

**1.      Administrative Expenses.**

Administrative expenses are claims for costs or expenses of administering the

Debtor's Chapter 11 case which are allowed under Bankruptcy Code section 507(a)(1). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan.

| Name | Code § | Total Estimated | Paid by Debtor to Date | Total Estimated Required to Be Paid on the Effective Date | Treatment |
|---|---|---|---|---|---|
| Lawrence C. Meyerson, a PLC<br><br>General Counsel to the Debtor | 507(a)(2) | $200,000.00 | $00.00 (although a pre-filing retainer of $50,000.00 was received, and of which $38,751.00 remained on the Petition Date) | $00.00 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order and on the further condition that funds are available to the Debtor. This claimant has entered into a written agreement with the Debtor to defer payment of the Allowed Administrative Claim to accommodate cash flow requirements of the Plan. |
| Winthrop Couchot LLP<br><br>Counsel to Official | 507(a)(2) | $100,000.00 | $ 00.00 (although a post Petition retainer of | $ 00.00 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise |

4

| | | | | | |
|---|---|---|---|---|---|
| Committee of Unsecured Creditors | | | $50,000.00 has been paid by the Debtor) | | agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order and on the further condition that funds are available to the Debtor. This claimant has entered into a written agreement with the Debtor to defer payment of the Allowed Administrative Claim to accommodate cash flow requirements of the Plan. |
| Clerk, Bankruptcy Court Fees | 507(a)(2) | $00.00 | $ 00.00 | $ 00.00 | Paid in full on the Effective Date. |
| United States Trustee Fees | 507(a)(2) | $37,375.00 | $17,875.00 plus third quarter fees of $6,500.00 anticipated to be paid pre-confirmation | $00.00 | The United States Trustee Quarterly Fees as of the Effective Date are estimated and will be paid in full to the extent they are due and owing on the Effective Date if not paid prior thereto in the ordinary course.<br><br>In addition, post confirmation quarterly fees of the United States Trustee will be paid to the extent they are due and owing until the bankruptcy case is dismissed or a final decree has been entered, whichever occurs first. |
| Total: | | $337,375.00 | $ 113,126.00 | $ 00.00 | |

<u>Court Approval of Fees Required</u>:

   The Court must approve all professional fees listed in this chart.  For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

   **2.     Priority Tax Claims.**

   Priority tax claims are certain unsecured income, employment and other taxes described by Bankruptcy Code section 507(a)(8).  The Bankruptcy Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the Petition Date.

   The following chart lists <u>all</u> of the Debtor's section 507(a)(8) priority tax claims and their treatment under this Plan.

| Description | Claim Amount | Treatment |
|---|---|---|
| Internal Revenue Service<br><br><u>Type of Tax</u>: WT-FICA<br><u>Type of Tax</u>: Corporate income<br><br><u>Date tax assessed</u>:<br>February 1, 2010 and November 15, 2010. | The IRS has filed an amended claim (Claim No. 81) reflecting the following:<br><br>Priority - $1,899.68<br>Secured - $119,555.60<br>Unsecured - $1,993.71<br>Total - $123,448.99<br><br>The secured claim is classified in the Plan as Class 2.<br><br>The entire IRS claim will be paid in full in accordance with the schedule set forth in the Treatment section hereof. | <u>Payment Interval</u>:  Monthly if required.<br><br><u>Payment Amt</u>:  Initial payment will be made upon the later to occur of: 10 days following the Effective Date or 10 days following the allowance of the claim of the IRS. Debtor presently believes that it has operating losses to offset any amount of corporate income taxes claimed by the IRS. Any amount deemed to be payable shall be paid either: pursuant to a five (5) year payment plan or as otherwise Unencumbered Equipment, subject to its lien, is liquidated. The unsecured priority portion of the IRS claim will be paid within 10 |

| | | |
|---|---|---|
| | | days following the Effective Date. The unsecured portion of the IRS claim will be paid, after adjustment, with other General Unsecured Claims, Class ___.<br><br>Begin Date:  Within 10 days of the Effective Date, estimated to be prior to April 1, 2012.<br><br>End date:  Estimated, April , 2017 based on an April 2012 begin date, but only if required due to disallowance of claimed offsets.<br><br>Interest Rate:  IRS rate, as applicable, over the term of the repayment schedule, if required.<br><br>Total Payout Amount: $Unknown at this time<br><br>Total Payment Percentage: 100% |
| Oklahoma Tax Commission<br><br>Type of Tax: Franchise Tax<br>Type of Tax: Withholding Tax<br><br>Date tax assessed: N/A | The Oklahoma Tax Commission has filed  a claim (Claim No. 58) reflecting the following:<br><br>Priority - $578.16<br>Unsecured - $30.00<br>Total - $608.16 | Payment Amt:  A single payment will be made within 10 days following the Effective Date<br><br>Total Payment Percentage: 100% |
| Total: | $ _____ | |

C.    **Classified Claims and Interests.**

1.      **Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the Estate.  The following chart lists all classes containing the Debtor's secured pre-petition claims and their treatment under

this Plan:

7

| Class No. | Description | Impaired | Treatment |
|---|---|---|---|
| 1 | Secured Claim of Bank of America<br><br>Claim Amount:<br>Approximately $2,696,737.89 plus attorneys fees, costs and other permitted charges according to proof.<br><br>Collateral description:<br>All of the Debtor's cash, accounts, Inventory, etc. (but excluding vehicles and equipment) and proceeds of each .<br><br>Nature of lien:<br>Secured by UCC-1 Financing Statement filed with the California Secretary of State.<br><br>Priority:<br>First.<br><br>Insider of the Debtor: No. | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | The Bank of America Term Loan and Security Agreement, as amended and Forbearance Agreement shall be modified as follows:<br><br>Payment interval: Monthly.<br><br>Payment amount: Current interest at the variable rate of LIBOR plus 5.50% per annum on the unpaid principal balance plus principal payments based upon a seven year amortization schedule, all due and payable two years following the Effective Date, together with any attorneys fees, costs and other permitted charges; provided, however, that a full year's principal pay down shall be paid in nine installments only, and due in the months of March through November. At no time shall the total of 90% of under 90 day accounts receivable and 39.7% of inventory be less than the outstanding indebtedness to Bank of America, compliance to be measured quarterly. In the event that the total of 90% of under 90 day accounts receivable and 39.7% of inventory, measured quarterly, shall not exceed the outstanding indebtedness to Bank of America, then Debtor shall have five business days following receipt of written notice from Bank of America to cure the shortfall, and any failure to do so shall be a default under the Bank of America Term Loan and Security Agreement. Additionally, the Debtor shall maintain a debt service coverage ratio of 1.0 to 1 as of June 30 and September 30 of each year and 0.75 to 1 as of December 31 of each year, but with no measurement or compliance required as of March 31 of each year.  Finally, there shall no longer be a requirement |

| | | | that the Debtor utilize a lock box for deposit of its accounts receivable and other collections. |
| | | | |
| | | | Additional periodic payments of principal shall also be made from excess operating income to the extent that actual income for any quarter following the Effective Date exceeds that projected in the Budgets attached to the Disclosure Statement as Exhibit "_", less amounts necessary to pay deferred allowed priority claims of professionals, by more than 20% ("Surplus"). Any such Surplus shall be allocated one half to payment of outstanding principal to Bank of America and one half as a credit to required payments due to General Unsecured Creditors. |
| | | | |
| | | | <u>Begin date</u>: First business day of the first month following the Effective Date, estimated to be April 1, 2012. |
| | | | |
| | | | <u>End date</u>: The balance of unpaid principal and accrued interest and charges, if any, will be due and payable in full on April 1, 2014 |
| | | | |
| | | | <u>Interest rate</u>: Contract rate – LIBOR plus 5.50% variable. |
| | | | |
| | | | <u>Total payout</u>: 100% |
| | | | |
| | | | <u>Treatment of lien</u>: Bank of America shall retain its first priority lien on its collateral until its claim has been paid. |
| | | | |
| | | | <u>Other Terms:</u> This claim may be paid in full prior to the end date without any prepayment penalty. All defaults under the obligations to Bank of America will be deemed cured and the loan terms modified in accordance with the terms of the Plan on the Effective Date.  Bank of America will take no enforcement action against any party so long as all payments required by this Plan are current. |
| 2 | Internal Revenue Service | Yes. | Claim will be treated as an |

| | | | |
|---|---|---|---|
| | Claim Amount on Petition Date: Approximately $119,550.60<br><br>Collateral description: All of the Debtor's personal property assets<br><br>Nature of lien: Pre-petition lien filed June 16, 2010<br><br>Priority: Second, behind Bank of America's lien and other specific liens on portions of equipment; first lien on otherwise Unencumbered Equipment<br><br>Insider of the Debtor: No. | | unclassified priority claim consistent with the provisions of 11 U.S.C. Section 1129(a)(9)(D). See section III.B.2. hereinabove.<br><br>Treatment of lien: Pending consummation of the Plan and payment in full to the allowed secured claim of the IRS hereunder, the IRS shall retain its lien with the same validity and priority as existed immediately prior to the commencement of this bankruptcy case. Provided, however, that as otherwise Unencumbered Equipment is liquidated, a sum equal to the maximum potential allowed secured claim of the IRS shall be set aside in an interest bearing account in order to satisfy the eventual allowed claim of the IRS, if any, the Debtor being of the belief that it has operating losses to offset any amount of corporate income taxes claimed by the IRS |
| 3 | Ford Motor Credit Company<br><br>Claim Amount on Petition Date:<br><br>(a) Contract for the purchase of a 2008 Ford F350 Truck having an approximately balance of $33,300.73 on the Petition Date and secured by a first priority lien on VIN 1FTWW31R28EA04671 requiring a monthly payment of $973.78;<br><br>(b) Contract for the purchase of a 2008 Ford F350 Truck having an approximately balance of $28,629.90 on the Petition Date and secured by a first priority lien on VIN 1FTWW31R08EA73083 requiring a monthly payment of $959.78;<br><br>(c) Contract for the purchase of a 2007 Ford F150 Truck having an approximately balance of | Yes. | The Debtor's obligations to Ford Motor Credit Company shall be modified as follows:<br><br>Payment interval: Monthly, with any arrearages to have been cured prior to the Effective Date pursuant to the terms of Stipulations previously entered into and approved by the Court.<br><br>Payment amount: Monthly payments will continue following the Effective Date in the monthly amount presently required under the terms of the obligations, and will continue in that amount until the obligations are paid in full.<br><br>Begin date: first business day of the first month following the Effective Date, estimated to be April 1, 2012.<br><br>End date: Monthly payments will |

| | | | | |
|---|---|---|---|---|
| | | $10,164.52 on the Petition Date and secured by a first priority lien on VIN 1FTPA12527KB53893 requiring a monthly payment of $560.41 | | continue until the obligations are paid in full.<br><br>Interest rate: Existing contractual non-default rate.<br><br>Total payout: 100%<br><br>Treatment of lien: Ford Motor Credit Company shall retain its first priority lien on its collateral until such obligations have been paid. |
| | 4 | Wells Fargo Equipment Finance, Inc.<br><br>Claim Amount on Petition Date:<br><br>(a) Master Security Agreement and Schedule 2 thereto dated September 20, 2006 in the original amount of $269,621.76;<br><br>(b) Master Loan and Security Agreement and Loan Schedule thereto dated June 2, 2008 in the original amount of $708,190.78;<br><br>(c) Master Loan and Security Agreement and Loan Schedule thereto dated June 2, 2008 in the original amount of $24,275.87<br><br>On the Petition Date claimant contended that the principal indebtedness due to it totaled $505,871.66 and that scheduled monthly payments of $25,983.00 were in arrears from August, 2010 and sought relief from stay. An adequate protection order was subsequently entered requiring monthly payments of $15,040.00 commencing May 15, 2011 plus turnover of certain insurance proceeds totaling $59,087.10. Debtor is current with its required adequate protection payments.<br><br>Collateral description: Specified equipment. | Yes. | The Debtor's contract with Wells Fargo Equipment Finance, Inc. shall be modified as follows:<br><br>Payment interval: Monthly.<br><br>Payment amount: Monthly payments will continue following the Effective Date in the monthly amount presently required under the terms of the adequate protection order, and will continue in that amount for two years following the Effective Date, at which time payments shall revert to the originally scheduled amount of $25,983.00 until the obligation is paid in full. Interest shall be calculated for all periods prior to the Effective Date at the non-default rate.<br><br>Begin date: first business day of the first month following the Effective Date, estimated to be April 1, 2012.<br><br>End date: Monthly payments will continue until the obligation is paid in full.<br><br>Interest rate: Existing contractual non-default rate.<br><br>Total payout: 100%<br><br>Treatment of lien: Wells Fargo Equipment Finance, Inc. shall retain its first priority lien on its collateral until its obligations have |

| | | | been paid. |
|---|---|---|---|
| | Nature of lien:<br>Secured by UCC-1 Financing Statement filed with the California Secretary of State/<br><br>Priority:<br>First on specified collateral.<br><br>Insider of the Debtor: No. | | Other Terms: This claim may be paid in full prior to the end date without any prepayment penalty. All defaults under the obligations to Wells Fargo Equipment Finance will be deemed cured and the loan terms modified in accordance with the terms of the Plan on the Effective Date. Wells Fargo Equipment Finance will take no enforcement action against any party so long as all payments required by this Plan are current. |
| 5 | Volvo Financial Services<br><br>Claim Amount on Petition Date:<br><br>On the Petition Date claimant contended that the principal indebtedness due to it totaled $44,285.00 plus finance charges, less scheduled monthly payments made during the period February 1, 2009 through August 15, 2010, each in the amount of $1,230.14 pursuant to the terms of a Secured Promissory Note dated January 15, 2009. Volvo has asserted that the Debtor defaulted by failing to pay the installments due September 15, 2011 and each month thereafter, and as a consequence negotiated the terms of a Stipulation for Adequate Protection, and which was approved by Order entered June 30, 2011 requiring monthly payments of $3,690.42 commencing June 15, 2011 for five consecutive months and following which the Debtor shall be required to make only the contractual payment of $1,230.14. Debtor is current with its required adequate protection payments.<br><br>Collateral description:<br>Specified equipment. | Yes. | The Debtor's contract with Volvo Financial Services shall be modified as follows:<br><br>Payment interval: Monthly.<br><br>Payment amount: Monthly payments will continue following the Effective Date in the monthly amount presently required under the terms of the adequate protection order and will continue in that amount until the obligation is paid in full.<br><br>Begin date: first business day of the first month following the Effective Date, estimated to be April 1, 2010.<br><br>End date: Monthly payments will continue until the obligation is paid in full.<br><br>Interest rate: Existing contractual non-default rate.<br><br>Total payout: 100%<br><br>Treatment of lien: Volvo Financial Services shall retain its first priority lien on its collateral until its obligations have been paid.<br><br>This claim may be paid in full prior to the end date without any prepayment penalty. |

| | | | |
|---|---|---|---|
| Nature of lien:<br>Secured by UCC-1 Financing Statement filed with the California Secretary of State.<br><br>Priority:<br>First on specified collateral.<br><br>Insider of the Debtor: No. | | | |

### 2.   Classes of Priority Unsecured Claims.

Certain priority claims that are referred to in Bankruptcy Code sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan.

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | There are no unpaid  priority unsecured claims in this category | | The pre-petition wage claims of all  employees of the Debtor totaling $44,307.39 were paid post-petition pursuant to Court order. |
| | Total: | $ 00.00 | |

### 3.   Classes of General Unsecured Claims.

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code section 507(a).  The following chart identifies this Plan's treatment of the classes containing all of Debtor's general unsecured claims:

13

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 6A | Convenience Class Claims | Yes.<br><br>Impaired; claims in this class are entitled to vote on the Plan. | Creditors with Allowed Unsecured Claims of $5,000.00 or less, or who chose to reduce their Allowed Unsecured Claims to $5,000.00, may elect to be paid 30% of their claims as payment in full, and which claims shall be paid on December 31, 2012<br><br>Estimated amount of claims in this class = approx. $187,397.33 (See Exhibit "_" to the Disclosure Statement). |
| 6B | General Unsecured Claims | Yes.<br><br>Impaired; claims in this class are entitled to vote on the Plan. | Payment interval:  Annually, commencing December 31, 2012.<br><br>Payment amount:<br><br>(a) Initial Distribution. On or before December 31, 2012, the Debtor will pay, on account of allowed general unsecured claims, a distribution equal to 100% of the amount of any "Net Proceeds" received by the Debtor from the sale, refinancing, or other disposition of the Unencumbered Equipment, less any amount necessary to pay the secured claim of the IRS, but in no event less than 10% of the amount of allowed general unsecured claims.<br><br>(b) First Annual Distribution. On or before December 31, 2013, the Debtor will pay, on account of allowed general unsecured claims, a distribution equal to 100% of the amount of any Net Proceeds received by the Debtor from the sale, refinancing or other disposition of the Unencumbered Equipment during the prior year, but in no event less than 20% of the amount of allowed general unsecured claims. |

(c) Second Annual Distribution.  On or before December 31, 2014, the Debtor will pay, on account of allowed general unsecured claims, a distribution equal to 10% of the amount of allowed general unsecured claims.

(d) Third Annual Distribution. On or before December 31, 2015, the Debtor will pay, on account of allowed general unsecured claims, a distribution equal to 10% of the amount of allowed general unsecured claims.

(e) Fourth Annual Distribution. On or before December 31, 2016, the Debtor will pay, on account of allowed general unsecured claims, a distribution equal to 10% of the amount of allowed general unsecured claims.

(f) Fifth Annual Distribution. On or before December 31, 2017, the Debtor will pay, on account of allowed general unsecured claims, a distribution equal to 10% of the amount of allowed general unsecured claims.

(g) Sixth Annual Distribution. On or before December 31, 2018, the Debtor will pay, on account of allowed general unsecured claims, a distribution equal to the remaining outstanding principal balance of the allowed general unsecured claims

For the purpose of the Plan, the term "Net Proceeds" will mean the following:  the amount of any and all consideration of any nature received by the Debtor from the sale, refinancing or other disposition of the Unencumbered Equipment,

less the reasonable, out-of-pocket costs of disposing of the Unencumbered Equipment, including any reasonable broker's commissions, fees or other expenses related directly to the disposition of the Unencumbered Equipment.

Additional periodic payments of principal shall also be made from excess operating income to the extent that actual income for any quarter following the Effective Date exceeds that projected in the Budgets attached to the Disclosure Statement as Exhibit "4", less amounts necessary to pay deferred allowed priority claims of professionals, by more than 20% ("Surplus"). Any such Surplus shall be allocated one half to payment of outstanding principal to Bank of America and one half as a credit to required payments due to general unsecured creditors.

Security Interest in Unencumbered Equipment. On the effective date of the Plan, the Debtor will execute and deliver, to the Disbursing Agent to be appointed under the Plan, a security interest encumbering surplus machinery and equipment owned by the Debtor, identified in Exhibit "6" to the Disclosure Statement ("Unencumbered Equipment"). Such security interest will constitute a second priority security interest encumbering the Unencumbered Equipment subordinate only to that of the allowed secured claim of the IRS and will be for the sole and exclusive purpose of securing the payments owed on account of allowed general unsecured claims under the

Plan.

Disposition of Unencumbered Equipment.  From and after the effective date of the Plan, the Debtor will use its commercially reasonable best efforts to sell the Unencumbered Equipment for as favorable a price as possible under the circumstances, and as expeditiously as possible; provided, however, that the Debtor will use its commercially reasonable best efforts to insure that all Unencumbered Equipment will be sold, and payment therefor will be received, by the Debtor, so as to facilitate the payment required by December 31 , 2013. To the extent any Unencumbered Equipment remains unsold on such date, the Debtor shall continue its efforts to market and sell such Unencumbered Equipment and include any additional proceeds in the next annual distribution.

Uncured Default Under the Plan.  Any failure by the Debtor to pay timely any payment owed on account of allowed general unsecured claims under the Plan, or any failure by the Debtor to perform any other material obligation to holders of allowed general unsecured claims under the Plan, will constitute an event of default under the Plan.  Any failure by the Debtor to perform its obligations to the Bank of America under the Plan also will constitute an event of default with respect to the holders of allowed general unsecured claims under the Plan.  The Debtor will have a period of ten days to cure any payment default to general unsecured creditors under the Plan, and thirty days to cure

any non-payment default to general unsecured creditors under the Plan following its receipt of written notice.  In the event that the Debtor fails to cure timely any such default ("Uncured Default"), the general unsecured creditors, or any of them, will be entitled to exercise, on behalf of the holders of allowed general unsecured claims, any and all remedies that they may have under the Plan or under bankruptcy or non-bankruptcy law, including, without limitation, any and all remedies as a secured creditor with respect to the Unencumbered Equipment, and/or seeking the appointment of a trustee or a conversion of the Debtor's case

<u>Further Assurances</u>.  The Debtor will execute any documents, and take any acts, reasonably requested for the purpose of implementing the treatment of allowed general unsecured claims under the Plan.

<u>Subordination of Claims of Insiders and Affiliates</u>.  Any claims of insiders and affiliates of the Debtor will be subordinated to the payment of all other allowed general unsecured claims.

<u>Begin date</u>:  December 31, 2012.

<u>End date</u>:  December 31, 2018

<u>Interest rate</u>: No interest to be paid

<u>Total payout</u>: 100%

Estimated amount of claims in this class = approx. $_____ (See Exhibit "_" to

| | | | the Disclosure Statement). |
|---|---|---|---|

### 4.    Class(es) of Interest Holders.

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.  As the Debtor is a corporation, persons or entities holding preferred or common stock in the Debtor are interest holders.  The following chart identifies the Plan's treatment of the class of interest holders:

///

///

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 7 | Interest Holders | No. | Each interest holder shall retain his/her interest in the Debtor. |

## D.    Means of Effectuating the Plan.

### 1.    Funding for the Plan.

The Plan will be funded as follows:

Cash payments under the Plan to creditors will be derived from post-confirmation business revenues.  The cash in the Estate as of the confirmation date and the cash which will be obtained by the Estate after the confirmation date will be distributed to allowed administrative claims, allowed secured claims, and allowed general unsecured claims on account of their allowed claims pursuant to the provisions of the Plan.  As set forth in the Debtor's financial projections, there will be sufficient funds available to make the Effective Date payments as well as the payments to creditors as detailed herein.  Therefore, the Debtor has sufficient resources to meet its obligations based on its projected future income.  The reorganized Debtor will have the right to pay any allowed claim of any creditor at any time on or after the Effective Date, without premium or penalty.  Thus, if the Debtor's operating projections improve, at the Debtor's sole discretion, distributions under the Plan may commence earlier than on the dates set forth

in the Plan.  The Disbursing Agent (defined below) will make all distributions pursuant to the provisions of the Plan.

### 2.   Post-Confirmation Management.

The Debtor will retain possession of its property and the management of its financial affairs after the confirmation of the Plan as the Reorganized Debtor under the following   management:

> Scott Laine, Chief Execution Officer, Chief Financial Officer and Chairman of the Board.
>
> Ben Presley, Chief Operating Officer.
>
> Steve Petersen, Chief Operating Officer, Quarry Operations.

### 3.   Disbursing Agent.

Scott Laine shall act as the disbursing agent (Disbursing Agent) for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall serve without bond and shall not receive compensation for distribution services rendered and expenses incurred pursuant to the Plan.

**III.**

**TREATMENT OF MISCELLANEOUS ITEMS**

**A.   Executory Contracts and Unexpired Leases.**

**1.   Assumptions.**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan:

| Name of Party to Contract | Description of Lease or Contract to Be Assumed |
|---|---|
| Bank of America | Term Loan and Security Agreement (See Class 1 hereinabove). |
| Ford Motor Credit Company | Equipment lease/purchase contract as modified (See Class 3 hereinabove). |
| Wells Fargo Equipment Finance, Inc. | Equipment lease/purchase contract as |

| | modified (See Class 4 hereinabove). |
|---|---|
| Volvo Financial Services | Equipment lease/purchase contract as modified (See Class 5 hereinabove). |

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor. The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract as modified herein, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of the Disclosure Statement describing this Plan for the specific date.

**2.      Rejections.**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:   None.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of the Disclosure Statement for the specific date.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS  N/A  , 2012.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.      Changes in Rates Subject to Regulatory Commission Approval.**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**C.      Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

## IV.

## EFFECT OF CONFIRMATION OF PLAN

**A.**    **Discharge.**

This Plan provides that upon confirmation of the Plan, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141.  However, any liability imposed by the Plan will not be discharged.

**B.**    **Revesting of Property in the Debtor.**

Except as provided in Section IV.F, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the Estate in the Debtor.

**C.**    **Modification of Plan.**

The Plan Proponent may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if the Plan Proponent modifies the plan before confirmation.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.**    **Post-Confirmation Status Report.**

Within 120 days of the entry of the order confirming the Plan, the Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

**E.**    **Quarterly Fees.**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the Effective Date of the Plan.

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.    Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

**G.    Final Decree.**

Once the Estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Order of Court confirming the Plan, shall file a motion with the Court to obtain a final decree to close the case.

DATED:  September 30, 2011

Respectfully submitted,
L & W STONE CORPORATION


By:_____/S/_____
           Scott Laine,
           Chief Executive Officer


Lawrence C. Meyerson, a Professional
Law Corporation


By: _____/S/_____
           Lawrence C. Meyerson
           General Insolvency Counsel for
           L & W Stone Corporation, Debtor and
           Proposed General Insolvency Counsel for
           Debtor-in-Possession